633 S.E.2d 265

Margaret A. JOHNSON, Appellant

v.

Scott M. KILLMER, M.D. and Bryan K. Richmond, M.D., Appellees.

No. 31871.

Supreme Court of Appeals of West Virginia.

Submitted March 15, 2006.

Decided June 15, 2006.

Margaret A. Johnson, Pro se.

Todd A. Mount, Shaffer & Shaffer, Madison, for Dr. Richmond.

Jeffrey S. Molenda, Pullin, Fowler & Flanagan, Charleston, for Dr. Killmer.

PER CURIAM.

Appellant Margaret A. Johnson appeals from an order of the Circuit Court of Raleigh County that granted summary judgment in favor of her former employers, Appellees Dr. Scott M. Killmer and Dr. Bryan K. Richmond (hereinafter "the employer").[1] Ms. Johnson filed an action against the employer alleging that she was terminated by the employer because of her age, and that she was the victim of age-based discrimination while employed. In this appeal, Ms. Johnson alleges that the circuit court erred in finding insufficient evidence that she was terminated because of her age and that she was the victim of age-based discrimination. After careful consideration of these issues, we affirm the circuit court.

## I.

## FACTS

The record indicates that Ms. Johnson was hired by the employer as a billing supervisor on November 1, 1999. At the time of her hiring Ms. Johnson was 51 years old.[2] The employer's medical practice had a small staff of no more than 5 people during the relevant period of Ms. Johnson's employment. It appears that during the first week of Ms. Johnson's employment, problems began to surface between her and two other employees, Jenna Lusk and Kristy Coalson. On separate occa-

---

1. Ms. Johnson was represented by counsel below and her petition for appeal and brief on appeal were filed by counsel. However, while the case was pending for oral argument, Ms. Johnson's counsel filed a motion with this Court to withdraw as her counsel. This Court granted the motion.

2. Ms. Johnson turned 52 years of age three days after she began working for the employer.

sions, Ms. Lusk and Ms. Coalson told Ms. Johnson that she was a temporary employee who was hired simply to bring down a backlog of work. Ms. Johnson subsequently asked Dr. Killmer if she was hired simply to bring down the backlog of work. Dr. Killmer informed Ms. Johnson that this was not true.

In December of 1999, an office worker brought in lingerie to show to her co-workers. It appears that during a conversation about the lingerie, Ms. Lusk stated to Ms. Johnson, "I can't believe you're having sex with your husband. God you're older than my mother." Although Ms. Johnson stated that she was offended by the remarks, she did not inform the employer about the statements.

In April of 2000, Ms. Johnson complained to Dr. Killmer that other billing workers refused to recognize her as their supervisor, and that one co-worker, Ms. Coalson, stated that she did not want to work with Ms. Johnson. Dr. Killmer responded to the complaint by telling Ms. Johnson that "you have to earn their respect. You're older." [3]

In June of 2000, Ms. Johnson reported to Dr. Killmer that she did not like the atmosphere in the office and that she felt like she was "coming to a morgue." Ms. Johnson also stated that this is "no different than sexual harassment." Dr. Killmer replied that Ms. Johnson was not being sexually harassed. Ms. Johnson responded, "I didn't say that it was sexual harassment. I said this is no different than sexual harassment."

On July 14, 2000, Ms. Johnson was promoted to the position of office manager, "expressly for the purpose of resolving the interpersonal conflicts with the other employees." A few days after the promotion, Ms. Lusk and Ms. Coalson informed the employer that they could not work for Ms. Johnson and that they would resign if Ms. Johnson remained employed. Ms. Lusk and Ms. Coalson resigned after the employer refused to take any action against Ms. Johnson. [4]

Also in July of 2000, the employer hired another office worker, Mitzi Evans. According to Ms. Johnson, Ms. Evans made fun of the way she spoke and told her that West Virginians do not "take kindly to outsiders." [5] Ms. Johnson also alleged that on another occasion, while she was on the phone talking with her husband, she complained about Ms. Evans. Ms. Evans overheard the conversation and demanded that Ms. Johnson accompany her to meet with the employer. A meeting was held and the employer stated that there was no problem with Ms. Johnson speaking to her husband while at work. [6]

As a result of the continued problems in the office between Ms. Johnson and her co-workers, the employer decided to demote her on August 28, 2000. Dr. Killmer stated that "we decided to try to diminish her contact with other employees and demote her back to billing ... just billing and collecting where she would not have to interact with the other employees." A day after the demotion decision was made, the employer terminated Ms. Johnson. The termination occurred after the employer learned that Ms. Johnson did not come to work because she was looking for another job, and that she had taken documents out of the office. The official reason given by the employer for the termination was that of gross neglect as a supervisor and too much conflict in the office.

On October 22, 2001, Ms. Johnson filed the instant action against the employer. [7] Ms.

---

3. Around this same time period, Dr. Killmer treated Ms. Johnson as a patient for a minor procedure. Shortly after the treatment, Ms. Johnson informed Dr. Richmond that Dr. Killmer had a hard time putting a needle in her vein. According to Ms. Johnson, Dr. Richmond replied, "That's what happens when you get old, your skin gets tough and rubbery."

In another incident occurring during this time period, Dr. Killmer asked Ms. Johnson to write a letter informing patients having skin tags removed that health care insurers do not pay for the procedure because skin tags do not cause cancer. Dr. Killmer also stated to Ms. Johnson, "you know about that, you fall in that category."

4. Ms. Lusk was eventually rehired.

5. It appears that Ms. Johnson was originally from New Jersey.

6. Ms. Johnson was later informed by another employee, Nicole Brown, that Ms. Evans and fellow employee Christy Green did not like her and that Ms. Brown should not help her.

Johnson alleged that the employer terminated her because of her age, and that she was a victim of age-based discrimination while employed. After a long period of discovery, the employer moved for summary judgment. By order entered January 8, 2004, the circuit granted the employer's motion for summary judgment. This appeal followed.

## II.

### STANDARD OF REVIEW

As noted above, this is an appeal from a summary judgment order. We have held that "[a] circuit court's entry of summary judgment is reviewed de novo." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). *See Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995) ("assessing a prima facie case in a . . . discrimination claim is a question of law over which we have plenary review."). We have also indicated that "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995). Further, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

## III.

### DISCUSSION

Ms. Johnson asserted two liability theories in this case. First, she alleged that the employer terminated her because of her age. Second, Ms. Johnson alleged that during her employment she was subjected to age-based harassment.[8] The circuit court found that the evidence failed to support either theory of liability. In doing so, the circuit court summarized its findings as follows:

> [T]he Court is of the opinion that because [Ms. Johnson's] employment status was "at will," the Defendants had a right to discharge her for any reason, except for a prohibited discriminatory cause. The Defendants' reasons for the subject discharge do not fall in a forbidden category of discrimination. [Ms. Johnson] cannot make out a prima facie case that age was a motivating factor in her discharge. Furthermore, no reasonable jury could find that [Ms. Johnson] was subjected to severe and pervasive age-based harassment, imputable to either Defendant via knowledge or participation. Accordingly, summary judgment should be granted, on both counts, pursuant to Rule 56 of the West Virginia Rules of Civil Procedure.

In determining whether the record supports the circuit court's ruling, we will review the evidence as to each liability theory separately.

### A.

#### *Termination Based Upon Age*

Assuming for the sake of argument that a cause of action existed, we will address Ms. Johnson's age discrimination claim. Ms.

---

7. Ms. Johnson also named as a defendant, Beckley Area Surgical Associates. However, this defendant was dismissed based upon a stipulation of the parties.

8. Ms. Johnson's aged-based theories of liability are expressly recognized under the West Virginia Human Rights Act, W.Va.Code § 5–11–9 (1998). However, in order to maintain a cause of action against an employer under the Act, the employer must have been "employing twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place[.]" W.Va. Code § 5–11–3(d) (1998). In the instant matter it is clear from the record that during the rele-

vant times of the alleged discrimination, the employer had no more than 5 employees. Consequently, Ms. Johnson could not bring an action for discrimination under the Act.

The Complaint filed by Ms. Johnson alleged that the employer violated "public policy" in terminating her because of her age and allowing her to be subjected to age-based harassment during her employment. This Court has never recognized a public policy against age discrimination. Because the Human Rights Act provides a comprehensive remedy and because the parties did not brief this issue, we need not address the question of a general public policy against age discrimination.

Johnson contends that her termination was discriminatory and unlawful because she was fired due to her age.[9] We have held that to successfully defend against a motion for summary judgment in a discrimination claim "the plaintiff must make some showing of fact which would support a prima facie case for his[/her] claim." Syllabus Point 2, *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423 (1986). In Syllabus Point 3 of *Conaway* we defined the elements of a prima facie case for age discrimination as follows:

> In order to make a prima facie case of employment discrimination ... the plaintiff must offer proof of the following:
>
> (1) That the plaintiff is a member of a protected class.
>
> (2) That the employer made an adverse decision concerning the plaintiff.
>
> (3) But for the plaintiff's protected status, the adverse decision would not have been made.

In the instant case, Ms. Johnson satisfied the first two elements required by *Conaway*. The record shows that Ms. Johnson was 52 years of age when she was terminated by the employer, and therefore was a member of a protected class. Additionally, the evidence is clear in showing the employer made an adverse decision concerning Ms. Johnson when her employment was terminated.

The problematic issue for Ms. Johnson is the evidence she adduced to satisfy the third requirement set forth in *Conaway*, i.e., "but for" her age the decision to terminate her would not have been made. In addressing the third requirement of *Conaway*, this Court has stated:

> The first two parts of the test are easy, but the third will cause controversy. Because discrimination is essentially an element of the mind, there will probably be very little direct proof available. Direct proof, however, is not required. What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of the protected class so as to give rise to an inference that the

employment decision was based on an illegal discriminatory criterion. This evidence could, for example, come in the form of an admission by the employer, a case of unequal or disparate treatment between members of the protected class and others by the elimination of the apparent legitimate reasons for the decision, or statistics in a large operation which show that members of the protected class received substantially worse treatment than others.

*Conaway*, 178 W.Va. at 170–171, 358 S.E.2d at 429–430 (footnotes omitted).

■ Upon a review of the entire record, we find that Ms. Johnson failed to show any sort of nexus between her age and the employer's decision to terminate her. In other words, Ms. Johnson did not provide evidence which would sufficiently link the termination decision to her status as a member of a protected class so as to give rise to an inference that the decision was based on her age. The case of *Proud v. Stone*, 945 F.2d 796 (4th Cir.1991) illustrates Ms. Johnson's evidentiary problem.

In *Proud*, the plaintiff was hired by the defendant as a Chief Accountant. At the time of the hiring, the plaintiff was 68 years old. Within six months of being hired, the plaintiff was fired because of poor work performance. The plaintiff thereafter filed an action in federal court alleging that he was terminated because of his age. During the trial of the case, the district judge dismissed the action at the close of the plaintiff's case-in-chief. On appeal, the Fourth Circuit Court of Appeals affirmed. In doing so, the Court of Appeals explained:

> In assessing whether [plaintiff] established that age was a motivating factor for his discharge, we focus on the undisputed fact that the individual who fired [plaintiff] is the same individual who hired him less than six months earlier with full knowledge of his age. One is quickly drawn to the realization that "[c]laims that employer animus exists in termination but not in hiring seem irrational." From the standpoint of the putative discriminator, "[i]t hardly makes sense to hire workers from a group

---

9. Pursuant to W.Va.Code § 5–11–9(1), an employer is prohibited from, among other things, terminating an employee because he or she is 40

years old or older. *See* W.Va.Code § 5–11–3(k) (1998) which defines "age."

one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." Donohue & Siegelman, The Changing Nature of Employment Discrimination Litigation, 43 Stan.L.Rev. 983, 1017 (1991). Therefore, in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer. While we can imagine egregious facts from which a discharge in this context could still be proven to have been discriminatory, it is likely that the compelling nature of the inference arising from facts such as these will make cases involving this situation amenable to resolution at an early stage.

*Proud,* 945 F.2d at 797–798. We find the reasoning in *Proud* persuasive.

In the instant proceeding, the employer hired Ms. Johnson when she was 51 years old. Within ten months of hiring Ms. Johnson the employer fired her. Under this set of facts alone, it would be "irrational" to infer that Ms. Johnson was fired because of her age. Ms. Johnson had to present some plausible evidence, not hollow assertions, in order to overcome the "strong inference" that age was not a determining factor for her termination. Adding to the difficulty of proof is the fact that the employer promoted Ms. Johnson, after she had turned 52, and allowed two other employees to quit rather than take an adverse employment decision against her.[10] In view of Ms. Johnson's lack of evidence on the "but for" element, the circuit court was correct in disposing of this claim at the summary judgment stage.

### B.

### Age–Based Harassment During Employment

■ Again, assuming for the sake of argument that a cause of action existed, we will address Ms. Johnson's age harassment claim. Ms. Johnson also alleged that she was a victim of age-based harassment during her employment.[11] Although it does not appear that this Court has ever rendered a decision involving such a claim, other courts have noted that "[n]ot every comment about a worker's age is direct evidence of [harassment]." *Scott v. Sears, Roebuck and Co.,* 395 F.Supp.2d 961, 973 (D.Ore.2005). That is, "isolated comments ... are insufficient to create a hostile working environment." *Id.* at 980. The United States Supreme Court has indicated that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances ... includ[ing] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). Further, "[i]n characterizing the negative workplace environment, courts have drawn a continuum between rudeness and ostracism, on one side of the spectrum, and severe or pervasive harassment on the other side, generally finding that 'rudeness or ostracism, standing alone' is insufficient to support a hostile work environment claim[.]" *Figueroa Reyes v. Hospital San Pablo del Este,* 389 F.Supp.2d 205, 213 (D.P.R.2005).

It has been recognized that for an age-based hostile work environment " 'claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." ' *MacKenzie v. City and County of Denver,* 414 F.3d 1266, 1280 (10th Cir.2005),

---

**10.** The evidence also showed that the employer was willing to demote Ms. Johnson, rather than fire her, until it was learned that she was seeking another job and had taken office documents home.

**11.** Our Human Rights Act recognizes a cause of action for age-based harassment or hostile work environment. Specifically, under W.Va.Code § 5–11–9(7)(A), an employer is prohibited from harassing an employee because of his or her age.

*quoting Penry v. Fed. Home Loan of Topeka,* 155 F.3d 1257, 1261 (10th Cir.1998). Further, courts addressing a claim of age-based harassment have indicated that in order to establish a claim for employment age-based harassment during employment a plaintiff must show that (1) he/she was subject to unwelcome harassment, (2) harassment was due to his/her age, (3) harassment was so severe or pervasive as to alter conditions of his/her work environment by creating a hostile or abusive situation, and (4) there was basis for employer liability.[12] *See Graziano v. Village of Oak Park,* 401 F.Supp.2d 918, 934 (N.D.Ill.2005); *City of Houston v. Fletcher,* 166 S.W.3d 479, 489 (Tex.App.2005).[13]

■ In viewing the evidence in the light most favorable to Ms. Johnson, we will assume that "harassment" occurred for the purposes of the first element of a prima facie case. Even so, we find that she has failed to satisfy the second element of a prima facie case, i.e., the harassment was due to her age. At best the evidence showed that on one occasion a co-worker made an impolite remark to Ms. Johnson concerning her age.[14] All of the other incidents of conflicts with co-workers simply were not connected directly or indirectly to Ms. Johnson's age. The sum total of the evidence was insufficient as a matter of law to trigger an analysis of the other elements of a prima facie claim.[15] *See Racicot v. Wal-Mart Stores, Inc.,* 414 F.3d 675, 678 (7th Cir.2005) ("[Two co-workers']

isolated comments about [plaintiff's] age were neither severe or pervasive enough to create an objectively hostile work environment.... [T]he statements made by [the co-workers] are examples of boorish behavior but not actionable age harassment.").

In the instant case, we agree with the circuit court's observation that "[a]n unfortunate fact of life is that the modern workplace is sometimes a rough and tumble environment, where pettiness, inconsideration and discourtesy reign.... But age-based harassment is a very different animal, and must be contrasted with common office pettiness or politics." Ms. Johnson's evidence established office pettiness, not age-based harassment. *See Pronin v. Raffi Custom Photo Lab., Inc.,* 383 F.Supp.2d 628, 634 (S.D.N.Y.2005) ("Abusive conduct in the workplace, if not based on a protected class, is not actionable under [discrimination laws]. These [laws] prohibit discrimination and are not civility codes.").

## IV.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's order granting summary judgment in favor of the employer.

Affirmed.

---

**12.** The circuit court applied a modified version of the test used for sexual harassment, the elements of which are similar. *See* Syllabus Point 5, *Hanlon v. Chambers,* 195 W.Va. 99, 464 S.E.2d 741 (1995) ("To establish a claim for sexual harassment ..., based upon a hostile or abusive work environment, a plaintiff-employee must prove that (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer.").

**13.** Courts also have held that "[a]n affirmative defense is available to an employer who shows '(a) that the employer exercised reasonable care to prevent and correct promptly any ... harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided

by the employer or to avoid harm otherwise.' " *Oleyar v. County of Durham,* 336 F.Supp.2d 512, 518 (M.D.N.C.2004), *quoting Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 2293, 141 L.Ed.2d 662 (1998).

**14.** This incident was never communicated to the employer.

**15.** The evidence also showed that on one occasion, in commenting about the difficulty of inserting a needle in Ms. Johnson, the employer stated that it was due to her age and the deterioration of the body. This statement was a medical observation to a question posed to the employer by Ms. Johnson. Further, on another occasion the employer told Ms. Johnson that she had to earn the respect of her co-workers because she was older. This statement was made in the context of helping Ms. Johnson deal with the conflicts she encountered with co-workers.